**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

ULIOUS BROOKS,

        Plaintiff,

   v.

JESSICA DALTON, et al.,

        Defendants.

Case No. 1:16-cv-564
Black, J.
Bowman, M.J.

**REPORT AND RECOMMENDATION**

Plaintiff, an SOCF inmate, is an experienced litigant, having filed two petitions for writs of habeas corpus and five civil suits in this Court alone concerning conditions of his confinement, as well as numerous state court lawsuits. Both Plaintiff and Defendants have filed motions for summary judgment in this case. Plaintiff also has filed a motion for default judgment against all Defendants. For the reasons that follow, the undersigned now recommends that Defendants' motion be granted, and that Plaintiff's three motions be denied.

**I.    Background[1]**

Initiated on May 19, 2016, the above-captioned case relates closely to a prior case filed by Plaintiff, Case No. 1:15-cv-812, on which judgment was entered in Defendant's favor on December 2, 2016. (*See* Docs. 74, 75, 76 in Case No. 1:15-cv-812). In the related case, Plaintiff alleged that Sergeant Mike Dillow used excessive

---

[1] The same background was set forth in the Order filed on January 12, 2017 (Doc. 29), but is repeated for the convenience of this Court.

force against him, in violation of the Eighth Amendment in November 2015. In granting summary judgment to Dillow, this Court determined that no genuine issue of material fact existed, and that Dillow had used only "*de minimis*" force during the incident about which Plaintiff had complained.

Prior to the filing of Dillow's dispositive motion in the related case, Plaintiff filed this new lawsuit against three additional SOCF employees (Officer Dalton, Warden Erdos, and Deputy Warden Cool), based upon evidence submitted in response to Plaintiff's discovery requests in Case No. 1:15-cv-812. Specifically, Plaintiff alleges here that Defendant Jessica Dalton "wrote a false conduct report and a false incident report ….and lied" about the incident that occurred between Dillow and Plaintiff, allegedly "at the request of Sgt. Dillow to cover up for his misconduct." (Doc. 1, at PageID 6, 8-9). In Claim Nos. 1-3, 9 and 12, Plaintiff alleges that Defendant Dalton is liable for failing to act or to protect him from Dillow's assault, for conspiracy based on her participation in covering up the assault she witnessed, and for libelous statements that she made against Plaintiff. (Doc. 1, at PageID 11, 14).

In an amended complaint, Plaintiff alleges that he discovered that the videotaped evidence produced in Case No. 1:15-cv-812 concerning the incident with Dillow had been "tampered with" based upon two brief gaps in the footage, including a 4-5 second gap and a second 6-9 second gap. Plaintiff alleges in the amended complaint that Defendant Erdos had a "duty to review and store the D.V.R. footage" and therefore "may have been the one to delete [scenes] from the D.V.R." and a "failure to act" claim based upon an allegation that Erdos failed to discipline staff for tampering with the videotaped footage. (Doc. 6, at PageID 68). Plaintiff also alleged in his amended

complaint that either Dillow, or Defendant Cool, or both, caused the deletion of seconds from the videotaped footage or "acted as a team to cover up the evidence against Dillow," and that Cool also "failed to act" because Cool should have noticed the gaps in the videotape during the excessive force investigation.

The undersigned held that Plaintiff could not state a claim against Defendant Dalton based upon her allegedly false conduct reports against Plaintiff, but nevertheless permitted some of Plaintiff's claims to proceed against Dalton on initial screening:

> Upon review of the complaint, as amended, and without the benefit of briefing by the parties, the undersigned concludes that the original complaint's "Claim Nos. 1-3, 9 and 12" for damages against defendant Jessica Dalton for failure to protect, conspiracy and libel are deserving of further development and may proceed at this early stage in the proceedings.

(Doc. 8, R&R at 6, PageID 83). The undersigned clarified that Plaintiff's allegations concerning the allegedly false conduct report survived "only to the extent that plaintiff (1) has alleged that Dalton witnessed the incident that occurred on November 24, 2015 and falsified reports of what she saw as part of a conspiracy to cover-up Dillow's use of excessive force, and (2) has brought a pendent state-law libel claim against Dalton." (*Id.* at n.1).

Most of the claims that Plaintiff alleged against Defendants Erdos and Cool were dismissed on initial screening, including all of the claims that Plaintiff alleged against those two Defendants in his original complaint. However, the undersigned permitted a "conspiracy" claim in Plaintiff's amended complaint to proceed beyond screening, despite describing the claim as "tenuous and speculative":

> The conspiracy claims alleged in the amended complaint against defendants Erdos and Cool are more tenuous and speculative, based

3

solely on the allegation that they were the only people, besides Dillow, who could have deleted portions of the videotape recording of the use-of-force incident to cover up Dillow's misconduct in that incident. Nevertheless, out of an abundance of caution at this early stage in the proceedings, the undersigned concludes that the amended complaint's conspiracy claims against defendants Erdos and Cool may also proceed. However, all other claims alleged in the complaint and amended complaint against those two supervisory officials should be dismissed for failure to state a claim upon which relief may be granted by this Court.

(Doc. 8 at 7, PageID 84).

As explained in this Court's last Order of January 12, 2017, the subsequent grant of summary judgment to Sgt. Dillow in Case No. 1:15-cv-812 drew into serious question the continuing viability of Plaintiff's claims in this case. In dismissing all claims of excessive force as well as Plaintiff's claims of retaliation against Dillow on December 2, 2016, the Court agreed that "no reasonable trier of fact could conclude that the force used by [Dillow] objectively rose to the level of a constitutional violation," and that the "force of which Plaintiff complains was brief and *de minimis*." (Doc. 74 in Case No. 1:15-cv-812, at PageID 498).

> The record …presents a nearly textbook example of an inmate who complains of a "push or shove" that has caused no discernible injury. In addition to failing to so much as allege any injury, the record confirms that Plaintiff suffered no injury as a result of the Defendant placing him against the wall on two occasions (on the stairway and in the corridor), or as a result of the force allegedly used by Defendant "pushing" and/or "rushing" Plaintiff down the hallway during part of the escort.

(*Id.* at PageID 501, citing *Wilkins v. Gaddy*, 559 U.S. 34, 37-38 (2010)).

In granting summary judgment to Dillow in the related case, the Court examined the momentary gaps in the videotaped footage of the November 24, 2015 incident between Dillow and Plaintiff. Two gaps were observed – a 4-5 second gap beginning at 12:00:00, and a second gap of approximately 6 seconds beginning at 12:00:13. In the

prior case, the Defendant offered a credible explanation for both of the two short time gaps, supported by evidence. Though Plaintiff generally disputed the Defendant's explanation, he offered no contrary evidence.[2]

In its opinion granting summary judgment, this Court ultimately found the two short gaps to be immaterial to any fact relating to Plaintiff's excessive use of force claim. With respect to the first gap, the undersigned wrote:

> There is a gap in the video record from 12:00:00 until 12:00:05, during which the parties do not appear to have moved from their positions. The technical basis for the 4-5 second gap has been explained by an affidavit offered by Defendant. (Doc. 58-7). While Plaintiff disputes the Defendant's technical explanation, the undersigned concludes that the gap is not material. Plaintiff alleges only one interaction that occurred on the stairwell in which he alleges that Defendant "rammed" him against the wall and pushed and/or "rushed" Plaintiff down the stairs. The entirety of the actions about which Plaintiff complains are fully reflected in the video.

(Doc. 74, at 23, n. 9, PageID 504). With respect to the second lapse, the undersigned similarly wrote: "No significant change in the parties' positions occurs during that 6-second interval, (12:00:13 to 12:00:19), and Plaintiff does not allege any further force was employed on the stairs, other than rushing him down the last few stairs." Thus, because <u>no relevant portion of Plaintiff's excessive force claim occurred during the extremely short time gaps in the videotape recordings</u>, the allegedly "deleted" seconds of videotape were not material. (See generally Docs. 74, 85 in Case No. 1:15-cv-812).

At the time the above-captioned case was first filed, Case No. 1:15-cv-812 was still ongoing. Therefore, on initial screening of the instant complaint, the undersigned

[2]The technical explanation for both time gaps is that the camera was set to a "sensitivity level…too low to detect only movement of Correctional Officer Mike Dillow's lips," meaning that the camera momentarily turned off when it did not detect physical body movement. (Case No. 1:15-cv-812, Doc. 58-7, PageID 379).

was bound to assume the veracity of Plaintiff's allegations, including but not limited to the underlying premise that Sergeant Dillow (who is not a party herein) had in fact violated Plaintiff's constitutional rights by using excessive force against Plaintiff on November 24, 2015.

The grant of summary judgment on all claims to Dillow in Case No. 1:15-cv-812 significantly impacts the original interpretation of Plaintiff's allegations in the instant case. This Court has now determined as a matter of law that no excessive force by Dillow occurred, and that the "missing" seconds of videotape were irrelevant to the excessive force claim. Thus, the core underpinnings of Plaintiff's claims against Defendants Dalton, Erdos, and Cool in this case have unraveled.

In the January 12, 2017 Order, the undersigned explained the issues, but declined to grant summary judgment *sua sponte* to the Defendants without allowing all parties further opportunity to brief the issues:

> Frankly, it is difficult to conceive of any continuing "failure to protect" claim or conspiracy claims against any of the three Defendants identified in the instant case given that the Court has already determined that Dillow did not engage in excessive force against Plaintiff on November 24, 2015. The undersigned is not aware of any constitutional duty to preserve immaterial videotaped evidence, or precisely how a conspiracy claim could arise concerning the alleged destruction of immaterial evidence.
>
> While it is appropriate to take judicial notice of the potential impact of the change in the posture of the now-dismissed underlying case on which the instant case is based, the undersigned is reluctant to *sua sponte* issue any dispositive rulings in the above-captioned case without allowing time for briefing by both parties. This is particularly true because Plaintiff in this case has already filed two dispositive motions in this case, to which Defendants have yet to file any response.

(Doc. 29 at 6-7).

All parties have now fully briefed the issues. On April 26, 2017, Defendants filed a combined response in opposition to Plaintiff's pending motions for summary judgment, as well as a counter-motion for summary judgment. Plaintiff also filed a response in opposition to Defendants' motion, to which Defendants filed a reply.

## II.     The Parties' Pending Dispositive Motions

### A.  Standard of Review

Federal Rule of Civil Procedure 56(a) provides that summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A dispute is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The moving party has the burden of showing an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

Once the moving party has met its burden of production, the non-moving party cannot rest on his pleadings, but must present significant probative evidence in support of his complaint to defeat the motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248-49. The mere existence of a scintilla of evidence to support the non-moving party's position will be insufficient; the evidence must be sufficient for a jury to reasonably find in favor of the nonmoving party. *Id.* at 252. Summary judgment is appropriate whenever the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to that party's case,

and on which that party will bear the burden of proof at trial. *Celotex Corp.*, 477 U.S. at 322.

### B. Plaintiff's Motions for Summary Judgment and for Default Judgment

On October 27, 2016, Plaintiff filed his first 4-page motion for summary judgment, arguing that he is entitled to judgment against Defendant Dalton based upon the discrepancies between her statement and/or conduct report and statements given by Defendant Dillow in Case No. 1:15-cv-812. Plaintiff argues that because Dalton was present, there is no dispute that she "failed to act, and to protect [Plaintiff] from being attacked by Mike Dillow." (Doc. 20 at 2, PageID 133). Similarly, Plaintiff relies on discovery responses filed in Case No. 1:15-cv-812 to support his allegations that Defendants Erdos and Cool must have reviewed the videotaped evidence, and therefore are responsible for conspiring to "destroy evidence" insofar as the videotape indisputably contains brief time gaps. On January 12, 2017, the undersigned granted Plaintiff's motion to submit a copy of the conduct report authored by Dalton as additional evidence in support of his motion. (Docs. 26, 29).

On October 28, 2016, Plaintiff filed a second motion for summary judgment on his slander and libel claim against Defendant Dalton. Like his first motion, this 3-page motion seeks judgment in Plaintiff's favor based solely upon alleged discrepancies between statements provided in discovery responses submitted in Case No. 1:15-cv-812 by Dillow and those submitted by Dalton. (Doc. 23). The referenced discovery responses from the prior case are attached as exhibits to the motion.

This Court initially granted Defendants' motion to extend time to respond to Plaintiff's two motions for summary judgment up to and including April 17, 2017. (Doc. 29). When Defendants failed to timely respond, on April 26, 2017 the undersigned directed them to "SHOW CAUSE" why Plaintiff's motions should not be considered unopposed and potentially granted. (Doc. 30). On the same date, Defendants promptly filed a response to that Order and tendered their response to Plaintiff's motions, along with a motion seeking leave to file the tardy response *instantur*. (Doc. 31, 32). Defendants combined their response in opposition to Plaintiff's motions with a counter-motion for summary judgment. The Court granted Defendants' motion for leave to file the response and counter-motion the same day.

On April 27, 2017, Plaintiff filed a motion seeking a default judgment against all Defendants on grounds that they had filed to timely respond to his motions for summary judgment. To be fair, it appears that Plaintiff was not aware either of the Court's show cause order, Defendants' rapid response thereto, or the accepted filing of Defendants' belated response and counter-motion on April 26. Given those proceedings, Plaintiff's motion for default judgment is moot.

### C. Defendants' Motion for Summary Judgment

In the combined response to Plaintiff's motions and counter-motion for summary judgment, Defendants persuasively argue that Plaintiff's motions must be denied, and Defendants' motion must be granted, based upon the entry of judgment in the closely related Case No. 1:15-cv-812. As stated, that unappealed judgment determined after review of the video evidence that Dillow did not assault Plaintiff in violation of the Eighth Amendment. Moreover, the Court deemed the allegedly "deleted" or "missing" seconds

of videotape to be immaterial and irrelevant, holding as a matter of law that the "missing" evidence could not have supported any Eighth Amendment claim, and that the *de minimis* force used by Dillow was reasonable under the circumstances.

Again, the only claim against Defendants Erdos and Cool was a conspiracy claim that the undersigned described as "tenuous and speculative" on initial screening but permitted to proceed at a time that the underlying Eighth Amendment claim in Case No. 1:15-cv-812 was still pending. Plaintiff alleged three claims against Defendant Dalton, which also were derivative of Plaintiff's Eighth Amendment claim against Dillow: (1) a "failure to protect" claim based on Dalton's alleged failure to protect Plaintiff from Dillow's excessive force; (2) a conspiracy claim relating to the "missing" videotape tape and/or conduct report against Plaintiff; and (3) a pendent state-law libel claim.

To prove his conspiracy claims under 42 U.S.C. § 1983, Plaintiff is required to show: (1) the existence of a conspiracy; and (2) an actual deprivation of a constitutional right.

> A civil conspiracy is an agreement between two or more people to injure another individual by unlawful action. *See Collyer v. Darling,* 98 F.3d 211, 229 (6th Cir.1996), *cert. denied,* 520 U.S. 1267, 117 S.Ct. 2439, 138 L.Ed.2d 199 (1997). To state a claim for conspiracy to violate a right protected by § 1983, plaintiff must allege facts showing a single plan existed, that the alleged coconspirator shared in the general conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy that caused injury to him. *Id.* Moreover, plaintiff must allege facts showing not only an agreement by defendants to violate plaintiff's constitutional rights, but also an actual deprivation of a constitutional right. *Stone v. Holzberger,* 807 F.Supp. 1325, 1340 (S.D.Ohio 1992) (Spiegel, J.) ("plaintiff must allege and prove both a conspiracy and an actual deprivation of rights; mere proof of conspiracy is insufficient to establish a section 1983 claim"). In addition, "conspiracy claims must be pled with some degree of specificity" and "vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983. Accordingly, pleading

> requirements governing civil conspiracies are relatively strict." *Fieger v. Cox,* 524 F.3d 770, 776 (6th Cir.2008) (internal citations and quotations omitted). Plaintiff must provide factual support respecting the material elements of his conspiracy claim. *See Moldowan v. City of Warren,* 578 F.3d 351, 395 (6th Cir.2009).

*Anderson v. County of Hamilton*, 780 F.Supp.2d 635, 652 (S.D.Ohio 2011).

Because the underlying Eighth Amendment claim on which all of the claims in this case are based was rejected by this Court in Case No. 1:15-cv-812, Plaintiff is unable to demonstrate an actual deprivation of any constitutional right to support his conspiracy claims. This Court has previously determined not only that Dillow did not violate Plaintiff's Eighth Amendment rights, and did not "assault" Plaintiff, but also that the allegedly "missing" videotape was immaterial and irrelevant, insofar as it could not have contained any support for any Eighth Amendment claim. Even if Plaintiff could prove (contrary to the evidence in Case No. 1:15-cv-812) that any of the named Defendants in this case had anything to do with the two brief lapses in the videotape record of the incident with Dillow, there is no constitutional duty to preserve immaterial evidence. *Accord Wiley v. Oberlin Police Dept.*, 330 Fed. Appx. 524, 530 (6th Cir. 2009) (summary judgment granted on conspiracy claim where plaintiff could not prove underlying constitutional violation); *Meyers v. Mitrovich*, No. 1:14-cv-1604, 2015 WL 413804 at *13 (Jan. 30, 2015, S.D. Ohio) (where officer did not use excessive force, defendants could not be held liable for conspiring to cover up his actions).

For the same reasons, Plaintiff's "failure to protect" claim against Dalton fails as a matter of law. A failure to protect or failure to intervene is actionable only when: "(1) the officer observed or had reason to know that excessive force would be or was being used; and (2) the officer had both the opportunity and the means to prevent the harm

11

from occurring." *Goodwin v. City of Painesville*, 781 F.3d 314, 328 (6th Cir. 2015) (quoting *Turner v. Scott,* 119 F.3d 425, 429 (6th Cir.1997)). Plaintiff's underlying premise, that Dillow assaulted him, has been disproven and Plaintiff suffered no injury. Dalton cannot be held liable for failing to protect Plaintiff from an event that did not happen.

Plaintiff's response in opposition to Defendants' motion argues that even though he suffered no injuries and this Court found no conduct by Dillow in violation of the Eighth Amendment, "the defendants still worked together to delete scenes from the footage, and wrote false reports in order to help Sergeant Dillow" and "violated the First Amendment of the Constitution." (Doc. 36 at 1). However, this Court has not previously recognized any "First Amendment" claims in this case, and is not inclined to do so now. In short, all related claims against all Defendants fail as a matter of law in this case, based upon this Court's findings and conclusions of law in Case No. 1:15-cv-812 that Dillow did not assault Plaintiff, and that the allegedly "missing" video evidence was immaterial and irrelevant.

Defendants concede that Plaintiff's pendant state law claim for libel against Defendant Dalton may not be as easily dismissed as wholly derivative of the claim in Case No. 1:15-cv-812. However, the undersigned agrees that based upon the dismissal of all of Plaintiff's other federal claims, this Court should not retain jurisdiction over any remaining state claim. In his response in opposition to Defendants' motion, Plaintiff asserts that his claim is a "Federal Libel claim," but that is contrary to the record of this case, as well as unsupported by federal law. Therefore, all claims filed against all Defendants in this case should be dismissed.

Based upon the above analysis, the undersigned finds no cause to reach Defendants' alternative arguments that they are entitled to qualified immunity on all claims, that Plaintiff's conspiracy claims fail under the Intracorporate Conspiracy Doctrine, or that Plaintiff's conspiracy claims also fail under 42 U.S.C. § 1985(3).

### III. Conclusion and Recommendations

For the reasons discussed herein, **IT IS RECOMMENDED THAT:**

1. Plaintiff's two motions for summary judgment, filed October 27, 2016 and October 28, 2016 (Docs. 20, 23) should be **DENIED**;

2. Plaintiff's motion for default judgment (Doc. 35) should be **DENIED** as moot;

3. Defendants' motion for summary judgment (Doc. 34) should be **GRANTED** for the reasons stated, with all claims dismissed with prejudice except for Plaintiff's pendent state law claim of libel against Defendant Dalton, which should be dismissed without prejudice;

4. Consistent with this Report and Recommendation, this case should be **CLOSED**.

 *s/ Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

ULIOUS BROOKS,

    Plaintiff,

  v.

JESSICA DALTON, et al.,

    Defendants.

Case No. 1:16-cv-564
Black, J.
Bowman, M.J.

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

14